UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23251-BLOOM/Otazo-Reyes

AXIS INSURANCE COMPANY,

    Plaintiff,

v.

OLIVIA YACHT LTD.,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Axis Insurance Company's ("Plaintiff" or "Axis") Motion for Summary Judgment, ECF No. [18] ("Motion"), along with its corresponding Statement of Material Facts, ECF No. [19] ("SMF"). Defendant Olivia Yacht Ltd. ("Defendant" or "Olivia Yacht") filed a Response in Opposition, ECF No. [23] ("Response"), and its Response to the Statement of Material Facts, ECF No. [22] ("Response to SMF"). Plaintiff filed a Reply to Defendant's Response, ECF No. [25] ("Reply"), and its Reply Statement of Material Facts, ECF No. [24] ("Reply to SMF"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I.    BACKGROUND**

On September 9, 2021, Plaintiff initiated this action against Defendant asserting one count of breach of navigational warranty. *See* ECF No. [1]. According to the Complaint, the parties agreed to an insurance policy, ECF No. [1-1] ("Policy"), whereby Plaintiff agreed to insure Defendant's 50' Schaefer Yacht Phantom 500 ("Vessel"). The Policy's navigational warranty required the Vessel to be within the confines of Coco Plum Marina in Coral Gables, Florida. *See*

*id.* at 2. The Vessel was outside of the agreed upon navigational limits when the Vessel caught fire and sank near Elliott Key, Florida. *See* ECF No. [1] ¶ 23. Therefore, Plaintiff seeks a declaration that it has no obligation to provide Olivia Yacht with insurance coverage under the Policy for any defense, liability, damages, losses, and/or expenses resulting from or arising out of the Vessel's burning and sinking near Elliott Key, Florida, sometime on May 23, 2021, because of Olivia Yacht's breach of the navigational warranty. *See id.* at 5.

In the instant Motion, Plaintiff seeks summary judgment in its favor because admiralty law requires a strict construction of the express navigational limits in the Policy and because Olivia Yacht's defenses fail as a matter of law and do not override the application of the navigational limits. *See* ECF No. [18]. Defendant responds that Axis waived the navigational limits stated in the Policy by issuing an endorsement amending the navigational limits to include the territorial waters of the Bahamas. *See* ECF No. [23]. Defendant also emphasizes that Axis billed and collected the full premium for the insurance that was quoted, which included coverage for navigation in the waters of the United States and the Bahamas, rather than a reduced amount for port risk coverage only. *See id.* at 1.

## II.   MATERIAL FACTS

Based on the parties' statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Olivia Yacht is a single-purpose entity that, at all times material, owned the Vessel. ECF Nos. [19] ¶ 1, [22] ¶ 1. On or about June 24, 2020, Axis, through its Stacks Insurance Brokerage, provided a quote (Quote #: 1173329) offering to insure the Vessel for a yearly premium of $4,429.00 with an insured value of $250,000.00 and navigational limits stated as: "Inland and

coastwise waters of the United States and Canada including the territorial waters of the Bahamas for a maximum of 30 consecutive days." ECF Nos. [22] at 3 ¶ 1, [24] ¶ 1.[1] On multiple occasions, Kami Koukoulas ("Broker") of Stacks Insurance Brokerage advised Olivia Yacht's agent that the Policy would have Port Risk coverage (no navigation) until the Letter of Compliance was written and receipts for the recommended repairs were submitted. ECF Nos. [19] ¶ 7, [22] ¶ 7.

On July 7, 2020, Defendant informed the Broker by email that it had completed the recommended repairs which had limited coverage to "port risk" rather than the initially quoted "Inland and coastwise waters of the United States and Canada including the territorial waters of the Bahamas for a maximum of 30 consecutive days." ECF Nos. [22] at 4 ¶ 2, [24] ¶ 2.[2] The Broker stated that a document she referred to as a Letter of Compliance was needed to confirm the requested repairs were completed. ECF Nos. [22] at 4 ¶ 3, [24] ¶ 3.[3] The requested Letter of Compliance was never prepared or submitted. ECF Nos. [19] ¶ 9, [22] ¶ 9. Thus, prior to the subject fire incident, proof of the requested work to the Vessel was never submitted. ECF Nos. [19] ¶ 8, [22] ¶ 8.

Axis issued a Seafarer Policy to Olivia Yacht, Policy Number S35463202, with effective dates of July 10, 2020, to July 10, 2021. ECF Nos. [19] ¶ 10, [22] ¶ 10; *see also* ECF No. [1-1] ("Policy"). Under Part D: Property Damage Coverage, the Policy extends coverage to claims for

---

[1] Defendant includes its own Statement of Material Facts in its Response to SMF. *See* ECF No. [22]. Because Defendant begins its Statement of Material Facts with the paragraph number "1" as opposed to continuing the paragraph numbering, any references to Defendant's Statement of Material Facts are indicated with the page number as well as the paragraph number.
[2] While Plaintiff does not dispute that Defendant sent such an e-mail, Plaintiff disputes the paragraph to the extent Olivia Yacht implies that the e-mail removed or should have removed the "port risk" coverage. ECF No. [24] ¶ 2.
[3] While Plaintiff does not dispute that the Broker stated that a Letter of Compliance was necessary, Plaintiff disputes the paragraph to the extent Olivia Yacht implies there was any obligation to provide a "letter of compliance form" to Olivia Yacht (or its agents). ECF No. [24] ¶ 3. Plaintiff further disputes that any alleged failure of the Broker to provide a "letter of compliance form" is in any way attributable to Axis. *Id*.

3

"all accidental, direct physical loss or damage to [Olivia Yacht's] Insured Property, except as excluded in this policy." ECF Nos. [19] ¶ 13, [22] ¶ 13. Under Part A: General Provisions, the Policy states:

> **4. NAVIGATIONAL LIMITS:** Coverage is provided while the Boat is on land or afloat within the Navigational Limits shown on the declarations page.

ECF Nos. [19] ¶ 14, [22] ¶ 14.

> The Declarations Page of the Policy states:
>
> "Navigational Limits: Coverage is provided while the boat is on land, or afloat within the confines of: Coco Plum Marina, Coral Gables, FL 33143."

ECF Nos. [19] ¶ 15, [22] ¶ 15.

> The Policy also contains a Bahamas Coverage Endorsement, which states:
>
> **This endorsement modifies the insurance provided by your policy as identified above. Please read it carefully.**
>
> In consideration of the premium charged, the NAVIGATIONAL LIMITS shown on the Declarations Page is hereby amended to extend coverage to the territory or territorial waters of the Commonwealth of Bahamas for a period not to exceed 30 consecutive days during the policy period. All coverage under this policy will be suspended until your insured property returns to the United States. Payment for any loss in the Bahamas will be made in the United States. We will only pay for those repairs made in the Bahamas that are required in order to return your Insured Property to the United States and we will not pay more than the reasonable cost for any repairs than would usually be charged at the nearest port of call in the United States where the repairs could have been made.
>
> Part B: General Limitations and Exclusions, Item 10 is hereby amended to add:
>
> c. at any time if your Insured Property is located in the territory or territorial waters of the Commonwealth of Bahamas.

ECF Nos. [19] ¶ 16, [22] ¶ 16.

Emmanuel Hermann is the beneficial owner of the Vessel. ECF Nos. [19] ¶ 19, [22] ¶ 19. On May 23, 2021, Emmanuel Hermann was at the helm and operating the Vessel. ECF Nos. [19] ¶ 20, [22] ¶ 20. Emmanuel Hermann explained that, on the date of loss, going to the Bahamas "was

the plan initially" but due to the wind "we cancelled and we decided to just to go closer." ECF Nos. [19] ¶ 21, [22] ¶ 21. On May 23, 2021, Emmanuel Hermann voluntarily sailed the Vessel outside the confines of Coco Plum Marina to Elliott Key, where he anchored the Vessel. ECF Nos. [19] ¶ 22, [22] ¶ 22. On the afternoon of May 23, 2021, while anchored at Elliott Key, the Vessel caught fire and sank. ECF Nos. [19] ¶ 23, [22] ¶ 23. At the time of the loss, the Vessel was anchored in Elliott Key and was not located in the territorial waters of the Commonwealth of Bahamas. ECF Nos. [19] ¶ 24, [22] ¶ 24. At the time of the loss, the Vessel was located outside of the Policy's stated navigational limits. ECF Nos. [19] ¶ 26, [22] ¶ 26.[4] Olivia Yacht made a claim against Axis under the Policy for coverage relating to or arising out of the burning and sinking of its Vessel. ECF Nos. [19] ¶ 27, [22] ¶ 27. Because the loss occurred outside of the Policy's navigational limits, Axis denied Olivia Yacht's claim via letter dated May 25, 2021. ECF Nos. [19] ¶ 28, [22] ¶ 28.

## III.  LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

---

[4] Defendant does not dispute that the Vessel was located outside the Policy's navigational limits but argues that the navigational limits were not in effect. ECF No. [22] ¶ 25.

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of demonstrating the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by

its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-moving party neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

**IV.    DISCUSSION**

    **a.  Summary Judgment**

As noted above, Plaintiff argues that the Court should grant summary judgment in its favor because admiralty law requires a strict construction of the express navigational limits in the Policy and because Olivia Yacht's defenses fail as a matter of law and do not override the application of the navigational limit. *See* ECF No. [18]. Plaintiff points out that the Policy states that "[c]overage is provided while the [Vessel] is on land or afloat within the Navigational Limits shown on the declarations page." ECF Nos. [19] ¶ 14, [22] ¶ 14. The declarations page states that the navigational limits are the confines of "Coco Plum Marina, Coral Gables, FL 33143." ECF Nos. [19] ¶ 15, [22] ¶ 15. The Bahamas Coverage Endorsement amends the navigational limits to include "the territory or territorial waters of the Commonwealth of Bahamas." ECF Nos. [19] ¶ 16, [22] ¶ 16. It is undisputed that the loss did not occur within the confines of Coco Plum Marina or

the Bahamas. ECF Nos. [19] ¶ 24, [22] ¶ 24. Therefore, the Vessel was not in the navigational limits of the Policy.

Defendant responds that Axis waived the navigational limits stated in the Policy by issuing the Bahamas Coverage Endorsement that amended the navigational limits to include the territorial waters of the Bahamas. *See* ECF No. [23]. According to Defendant, providing coverage for the Vessel while the Vessel is in the Bahamas and providing coverage while the Vessel remains within the confines of Coco Plum Marina create conflict in a way that makes the navigational limits ambiguous. *See id.* at 3. This ambiguity concerning navigational limits must be construed in favor of coverage. *See id.* (citing *Geico Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1137 (11th Cir. 2019)). Defendant also points out that Axis billed and collected the full premium for the insurance that was quoted, which included coverage for navigation in the waters of the United States and the Bahamas, rather than a reduced amount for port risk coverage only. *See id.* at 1.

The Court agrees with Plaintiff. As Plaintiff correctly notes, the Eleventh Circuit requires a "strict construction of express navigational limit warranties" in maritime insurance contracts. *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1168 (11th Cir. 2021). In this case, the Policy unambiguously states that Plaintiff agreed to provide Defendant with coverage for the Vessel while the Vessel is within the confines of Coco Plum Marina or the Bahamas. *See* ECF No. [1-1]. Meanwhile, it is undisputed that the loss occurred when the Vessel was at Elliott Key, Florida, which is clearly not within the confines of Coco Plum Marina or the Bahamas. ECF Nos. [19] ¶ 23, [22] ¶ 23. As such, Plaintiff has no obligation to provide Defendant with insurance coverage under the Policy.

Furthermore, the Court is not persuaded to the extent that Defendant argues that the Policy is ambiguous because the Policy provides coverage for the Vessel while the Vessel is within the

confines of Coco Plum Marina and while it is in the Bahamas and that the Bahamas Coverage Endorsement effectively rendered the Policy's navigational limits meaningless. The Policy plainly provides coverage while the Vessel is within the confines of Coco Plum Marina, and the Bahamas Coverage Endorsement extends that coverage to the Bahamas, not trips to and from the Bahamas. A policy is not rendered ambiguous and navigational limits are not rendered meaningless simply because the plain terms of the policy do not provide coverage for trips to and from disjoint areas of coverage.

Defendant's reliance on *Shackleford*, 945 F.3d at 1142, is similarly unavailing. In *Shackleford*, the Eleventh Circuit held that the insurer could be deemed to have waived the navigational time limits in the insurance policy if the insurer subsequently agreed to provide coverage for a trip that was impossible to complete within the navigational time limits. *See* 945 F.3d at 1142. The insurer in that case agreed to amend the policy to cover an additional trip, and the insured conceded that the additional trip could be completed within the time period set forth in the navigational limits in the policy. Therefore, the Eleventh Circuit held that the additional trip was possible without waiving the navigational limits, and as a result, the insurer could not be deemed to have waived the policy's navigational limits. *See id.* Here, the time period set forth in the Policy in which Defendant could have made a trip to the Bahamas is not at issue. Further, the subsequent Bahamas Coverage Endorsement does not render impossible the application of the amended navigational limits. Rather, as noted above, the Policy and the subsequent Bahamas Coverage Endorsement can be harmoniously read to provide coverage while the Vessel is within the confines of Coco Plum Marina or in the Bahamas. Here, it is undisputed that Defendant was navigating outside those navigational limits. As such, the Court determines that Axis is entitled to summary judgment in its favor.

### b. Counterclaim

As a final note, the Court addresses Defendant's Counterclaim, ECF No. [6] ("Counterclaim"). Defendant asserts a Counterclaim for breach of contract against Plaintiff under the same Policy for the same Vessel in question. *See id.* at 4-6. Defendant, however, has not moved for summary judgment on the Counterclaim, and Plaintiff has not expressly sought summary judgment on Defendant's Counterclaim.

Nonetheless, the Eleventh Circuit has held that "where a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided." *Artistic Entm't, Inc. v. City of Warner Robins,* 331 F.3d 1196, 1201-02 (11th Cir. 2003) (per curiam). In this case, the relevant legal issues have been fully developed by the parties' briefing, and there is no dispute as to the material facts. As such, the Court addresses the Counterclaim and determines that for the same reasons noted above, Plaintiff is entitled to final judgment in its favor on Defendant's Counterclaim.

## V.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [18]**, is **GRANTED**.
2. The Court will enter Final Judgment by a separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 21, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:  Counsel of Record